**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
# For the Eleventh Circuit

————————————————

No. 24-14167

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RADY WILLIAMS,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cr-00267-MHC-1

————————————————

————————————————

No. 24-14168

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RADY WILLIAMS,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-mj-00786-JKL-1

_____

Before JILL PRYOR, LUCK, and KIDD, Circuit Judges.

PER CURIAM:

After a bench trial, a magistrate judge convicted Rady Williams of two misdemeanors for violating National Park Service regulations inside a national park. One conviction was for conducting commercial operations in the park without a permit. The other conviction was for interfering with a park ranger engaged in his official duty. Williams appealed his convictions to the district court, arguing that there wasn't enough evidence to sustain either conviction. The district court affirmed. Williams now appeals to our court, raising the same arguments about insufficient evidence. After careful consideration, we affirm.

## FACTUAL BACKGROUND

Martin Luther King, Jr. National Historic Park is a national park in Atlanta, Georgia. The National Park Service has agreements with the state of Georgia and the city of Atlanta that allow

park rangers to enforce federal regulations within the boundaries of the park.

In 2022, a park ranger saw Williams in front of the park's visitor center holding a bag of white shirts. The ranger saw and photographed Williams holding up the shirts to park visitors. The ranger had seen Williams selling shirts to passersby before and had told him he couldn't solicit in the park without a permit. The ranger and his supervisor, the chief ranger, approached Williams and again told him he wasn't allowed to sell in the park. Williams protested that he was not in the park but eventually accepted a citation and left.

About a year after citing Williams for selling t-shirts, the same ranger saw Williams again doing business in the park, this time selling drinks out of a clear container. The container was sitting on a sidewalk, impeding pedestrians from walking there. The ranger and some officers with the Atlanta Police Department told Williams he could not block the sidewalk and asked him to leave.

Five days later, the chief ranger saw Williams selling drinks again. Williams was on a church driveway—private property, but still inside the park—and his drink container was sitting on the public sidewalk, forcing passing pedestrians into the street. The chief ranger ordered Williams to remove his belongings from the sidewalk. Williams refused, and said he would call the Atlanta police. The chief ranger told Williams he was under arrest and ordered him to put his hands behind his back. Williams resisted the chief

ranger's attempts to arrest him and the chief ranger was injured in the process.

## PROCEDURAL HISTORY

The government charged Williams by information with one count of soliciting business in a park area without a permit, in violation of 18 U.S.C. section 1865(a) and 36 C.F.R. section 5.3, and one count of resisting and intentionally interfering with a government employee engaged in an official duty, in violation of 18 U.S.C. section 1865(a) and 36 C.F.R. section 2.32(a)(1). Williams pleaded not guilty, and the case was set for a bench trial before a magistrate judge. At trial, the government introduced testimony from the two park rangers describing their encounters with Williams and a video of the arrest captured on the chief ranger's body camera. The government also introduced photos of Williams holding up a t-shirt to passersby. The magistrate judge found Williams guilty on both counts and sentenced him to one year of unsupervised probation.

Williams appealed to the district court, challenging the sufficiency of the evidence supporting his convictions for solicitating business and for interference. The district court affirmed. Williams now appeals to this court, renewing his sufficiency-of-the-evidence arguments.

## STANDARD OF REVIEW

We serve as "essentially a second tier of appellate review" of convictions by a magistrate judge in a bench trial, applying "the

same standard used by the district court." *United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010) (quotation omitted). We review de novo the sufficiency of the evidence supporting a conviction, resolving all reasonable inferences in favor of the verdict. *United States v. Daniels*, 91 F.4th 1083, 1092 (11th Cir. 2024). We view the evidence in the light most favorable to the government and overturn the verdict only if no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id*. at 1092–93.

## DISCUSSION

Williams argues that we should reverse his conviction because there was not enough evidence to establish his guilt beyond a reasonable doubt. But there was enough evidence for a reasonable trier of fact to find Williams guilty both as to the soliciting business charge and as to the interference charge.

*The evidence was sufficient to convict Williams of solicitation.*

Federal regulations governing national parks prohibit "soliciting any business in park areas, except in accordance with the provisions of a permit." 36 C.F.R. § 5.3. Williams argues there was not enough evidence in the record to prove that he was soliciting business. We disagree.

The government introduced testimony from a park ranger that Williams was on park property and that he had no permission to sell there. The ranger testified that Williams was holding up shirts to passersby and that he had a bag full of more shirts. And he testified that the rangers were familiar with non-solicitation

activities like begging and panhandling and that Williams's behavior was consistent with soliciting business, not with those other activities. The government also introduced a photo of Williams holding up a shirt. That was sufficient evidence to prove the violation.

Williams contends the evidence was insufficient because none of the testimony or other evidence established that he made any sales. But the government did not need to show any sales to prove Williams was soliciting; it only needed to show an attempt to sell. *See, e.g.*, *Solicitation*, Black's Law Dictionary (12th ed. 2024) (defining solicitation as "[a]n attempt or effort to gain business"). Because the evidence showed that Williams attempted to sell the t-shirts in park areas, the district court did not err when it affirmed this conviction.

*The evidence was sufficient to convict Williams of interference.*

Another regulation prohibits "[t]hreatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty." 36 C.F.R. § 2.32(a)(1). Williams contends that there was insufficient evidence to convict him because (1) the chief ranger did not have jurisdiction to arrest Williams on private property and (2) the government's evidence did not establish that Williams knew the chief ranger could arrest him, so it did not establish that he "intentionally" interfered. Both arguments fail.

A park regulation forbids the "intentional or reckless obstruction of any sidewalk" in park areas. 36 C.F.R. § 2.31(a)(5). The testimony at trial, supported by the chief ranger's body-camera

video, was that Williams's drink cooler was obstructing the side-walk and that Williams refused to remove the cooler when the chief ranger asked him to do so. Further, when the chief ranger ordered Williams to place his hands behind his back, Williams re-fused and actively resisted the chief ranger's attempt to arrest him. The testimony and the body-camera video were sufficient evidence to prove Williams resisted and interfered with the ranger while he was engaged in his official duties.

Williams offers two counterarguments. First, Williams as-serts the government "failed to establish jurisdiction to arrest and prosecute" him because his arrest occurred on private property. But the interference regulation is clear that it applies "regardless of land ownership" on land "within a park area." 36 C.F.R. § 2.32(b). Here, although the chief ranger arrested Williams on private prop-erty, that property was situated within the boundaries of the park area, so the chief ranger had jurisdiction to enforce the regulations there.

Second, Williams argues that the government didn't suffi-ciently prove he had the "requisite intent to resist" the chief park ranger. He says that the government had to prove that he "know-ingly and willfully" committed the offense. But he offers no basis in the regulation or case law for imposing such a requirement. The regulation says nothing about whether a defendant must know a government employee is engaged in an official duty, only that the defendant may not "intentionally interfer[e]" with that employee. *Id.* § 2.32(a)(1). Here, the body-camera video showed that

Williams's interference—refusing to remove his belongings from the sidewalk, resisting arrest, and ignoring the chief ranger's commands—was intentional.  That was enough under the regulation.

Because there was sufficient evidence for a reasonable factfinder to find Williams guilty of resisting and interfering with a government employee, the district court also did not err when it affirmed this conviction.

**AFFIRMED.**